Daly v. Fesco Agencies. Good morning. May it please the Court, my name is Michael Hurley and I am representing the appellant, U.S. Navy Lieutenant Commander Retired John R. Daly. And I would like to reserve four minutes for rebuttal, please. We're here today on two related appeals. One is an appeal of an adverse jury verdict. The other is an appeal from the costs award. We're going to rest on our briefs on the cost award case, so I would like to address myself to the main case today. And in addressing that case, we submit, Your Honors, that Mr. Daly is entitled to a new trial for all of the reasons that we've cited and discussed in our briefs, which were many. I would like to focus our attention this morning on three of those grounds. First, that the very rigid time limit on each side, solely because he wanted to go on a personal vacation and without any regard to ensuring a fair trial. Secondly, the trial judge refused at the beginning of trial, in response to a motion in limine, refused to allow Admiral Michael Kramer to testify on behalf of Mr. Daly. Admiral Kramer was Daly's commanding officer at the time of the laser attack. And third, the trial judge, at the conclusion of the time limit that he enforced on our case, he refused to allow U.S. Senator Robert Smith to testify as a rebuttal witness on behalf of Daly. As to the arbitrary and unreasonable time limit, this Court has recognized three principles which, and this again is an abuse of discretion standard, this Court has recognized three principles which govern and set the parameters for the decision here. A district court may impose reasonable time limits on each side during a trial to ensure the efficiency of the trial and to prevent undue delay, a waste of time or needless presentation of cumulative evidence. This Court has recognized that rigid time limits on trials are disapproved. And this Court has stated on occasions that courts must not adhere rigidly to time limits in sacrificing the interest of justice. Here it is undisputed that the trial judge imposed and adhered to this disfavored rigid time limit for the sole purpose of his going on a personal vacation. Were your co-counsel ever asked for more time? We did, Your Honor. At the conclusion of our rebuttal, when our time limit was up, we asked the Court to allow us to present the testimony of Senator Smith, which would have gone beyond our time limit. There were a number of reasons for not allowing Senator Smith, of which the time limit was one and which was the principal one. Were you ever specific? Well, I don't know if it was the principal one. It was the one that he first raised when we first raised the issue before lunch. He said, when we stated that he was a rebuttal witness, the judge's first statement was, when is he going to be here? And when we found out that it was going to be 3 o'clock in the afternoon and lunch was at noon, he said, we're not waiting on him. After lunch, after he had an hour or so to figure out what he wanted to do, he came back and added three more bases for why he was going to exclude Senator Smith from testifying as a rebuttal witness. I'm sorry, I didn't. That's it? That's the only time you ever asked for more time? That was the only time you ever asked for more time? That was the only time that we asked for more time. That's correct, Your Honor. So therefore, we can resolve the whole question just by looking at the Senator Smith question. In other words, two and three collapse into each other. I think, Your Honor, we obviously, as we pointed out in our briefs, we curtailed the cross-examination of defense witnesses. We actually forewent the cross-examination on one of their witnesses. We had to cut back on the direct examination of several of our expert witnesses in rebuttal because we knew the time limit was running on us. And this was not a judge who was How did the judge come up with the time? My understanding was that the time that he allotted was more than you had originally asked for. It was not, no. It was less by one entire day. More than you originally asked for. It was not, Your Honor. We asked at the original telephone pretrial conference. We asked each side, asked for five trial days. The judge at that time said, no, we're going to give you three days or three and a half days, and we negotiated him up to four. I'm sorry, but I thought there was an estimate earlier on on which he was operating, which was less than that. I'm sorry, Your Honor. That's not correct. There was a pretrial conference by telephone prior to trial at which that should be in my declaration in the excerpts of record. Go ahead. In any event, it's undisputed that a rigid, disfavored time limit was imposed. It is undisputed that it was improper because the trial judge imposed it for no other reason than that he wanted to go on a personal vacation. It is undisputed that there actually was time available that he could have given us to present additional rebuttal. Time available without regard to his vacation. Without regard to his vacation. Right. So the vacation really had nothing to do with it. That's not what he said on the record, Your Honor. He stated, here's what I'm worried about. I want to make sure that we get the case argued into the jury next week because I leave on the country on Saturday morning. But there was time for what you wanted to do within the time. The trial was not scheduled to end on Saturday morning. The trial on his time schedule was scheduled to end on Wednesday or Thursday. Yes. And this occurred on Thursday. Right. So there was time that he could have given you for Senator Smith. He could have, but he didn't because he was adhering to this rigid time limit. But not because of his vacation. Because it was time that would have allowed him to go on his vacation and allow you to put on Senator Smith. In other words, he didn't schedule it such that he was leaving that minute. I understand your statement, Your Honor, but you can't ignore the fundamental basis for why he imposed a time limit. And the only basis for his imposing the time limit was as stated on the record and as stated in Chambers was that he was leaving the country, he was going on a personal vacation. So we have a rigid time limit enforced by the judge that caused prejudice to our case. He also refused to allow Admiral Crane to go back. My information is that a year before the trial, when he asked how long the trial would take, the parties agreed it would take seven days. Is that wrong? On September 18th, 2001. I don't remember. I wasn't even in the case in 2001. But that's not an excuse for not knowing that. He was basically scheduling his vacation based on what he was told by the parties the trial was going to take. Well, he didn't have to try the case during the two weeks before he went on vacation. He was told that there was a certain time that he needed. He gave you that time you needed. And he made a schedule. He asked us in a pretrial conference on the Tuesday, a week before trial. It also asked you a year before. Yes. And he gave you an answer and he gave you what you asked for. If you think that vitiates the error here, then I plead with you to disabuse you of that notion. Because just before the trial started and he asked us again, a year before the trial, we had no idea what the evidence was going to be, how long it was going to take. That's not a fair assessment at that point in time of how long the case is going to take to trial before you engage in any discovery. Before trial, he did whatever a judge does. You have a pretrial conference. You ask each side how long it's going to take. The defense said five days. We said five days. He said, well, I can give you three days each. And we, again, as I said, we negotiated him up to four. But he stuck to four. And it was not just four hours of, I mean, not just four days of testimony and cross-examination. We got charged with the time that it took to select the jury. We got charged with all sorts of things that he wanted to charge us with. And he also refused, prior to trial, to allow the commanding officer of Commander Daly to testify at trial. He ruled that Admiral Cramer could not testify as witness because we had inadvertently omitted Cramer's name from the pretrial witness list in the pretrial order. Isn't your problem with Cramer that you really were going to make him an expert witness and you hadn't qualified him properly as such? I'm glad you brought that up, Your Honor, because he was not an expert witness. And that is crystal clear from the summary of his expected testimony. As set forth in the summary of his expected testimony, which was submitted in the errated of the pretrial order, which we filed on the next business day after we discovered that we had omitted his name from the witness list, we stated that he would testify as to his personal knowledge of the following facts, not opinions, but facts. The fact that Russian intelligence agencies used FESCO-owned vessels, and the Captain Man is a FESCO-owned vessel, for intelligence-gathering purposes against the United States and, among other things, monitoring the movements of our nuclear-powered submarines. That is a fact. He would also testify as to his personal knowledge of the fact, not the opinion, but the fact that Russian intelligence agencies had used lasers as weapons against U.S. intelligence-gathering. So there was no issue, no real issue here of his being an expert witness. There was no reason to... Yes, Your Honor. Excuse me. How could he have provided that information if he weren't an expert? He had no personal knowledge of it, did he? Yes, he did. He was the naval attache in Moscow for a number of years before he became the highest-ranking intelligence officer in the Navy. I understand that, but had he ever been out there and observed them using these lasers on these spy ships? What I mean by personal knowledge... I understand what you're saying, Your Honor. He knew, based on sources, intelligence sources, he knew... of FESCO sailors who had been on these vessels. This is the same thing, Your Honor, as when we had this issue at trial, and the trial judge allowed Commander Daley to testify based on his knowledge of intelligence that the Captain Man had deviated from its normal course and had deviated from its arrival and departure times based on intelligence that had been gathered and reviewed. And that's the same thing that Admiral Cramer... that's the same basis for his personal knowledge. But that is a particular event as to which somebody could... Yes, and Cramer would have testified as to... But at least as summarized here, it sounded as if Cramer was going to make generic statements about generic events. I don't know how you can make a generic... specific events that he knew of and given a date, time, and how he knew. Did you ever make a proffer, and were you given an opportunity to make a proffer, as to what he actually would have said? The judge didn't give us that opportunity other than what we stated in the summary of expected testimony. Everything we know about what he would have testified to. Yes. Now, we did make an argument at the time that he wasn't an expert witness, but the judge didn't... didn't give... he was interested in moving on with the trial and... It is sort of hard to tell from this summary, you know, what he would have done. Would he have gotten up and said, I've read 15 books, and that's how I know that the Russian intelligence agency used FESCO-owned merchant vessels? Or would he have said, I saw with my own eyes an intelligence agency using a FESCO-owned merchant vessel? You cannot... we cannot tell from this summary what he would have... Your Honor, that's a decision that should be made based on trial on a question-by-question basis. If he has, you know, if he's got objectionable testimony, the defense objects to it, then it could be excluded and not admitted. But there was no basis to exclude his testimony entirely. These were clearly facts that he was going to testify to. There was clear prejudice, Your Honor, here, because Kramer's testimony, as... as Daly's commanding officer at the time of the laser attack, was that... was that Russian intelligence agencies and, in fact, FESCO-owned vessels had done precisely what we were alleging had been done in this case, that there was a laser attack on U.S. intelligence gathering that had injured Commander Daly. And Kramer's testimony, if it had been allowed and admitted, would have corroborated the circumstantial evidence in this case that the captain man had fired a laser on him. Lastly, Your Honor, I would like to focus on the refusal to admit and to allow Senator Smith to testify as a rebuttal witness. Again, here, the... the standard is an abuse of discretion. And we have to go back to the Supreme Court's... U.S. Supreme Court's statement many years ago that... that a district court or trial court's discretion should be tempered greatly where the probative value of the... of the proffered evidence is high and where such evidence, even though it may have been admissible in the case in chief, was unnecessary for the plaintiff to establish his case in chief. Now, Senator Smith was offered solely as a rebuttal witness or... as a rebuttal witness solely for impeachment purposes, to impeach the testimony of FESCO witnesses regarding the validity of the investigation conducted by the Office of Naval Intelligence, ONI, which was... which the... the defense relied on for... How was he going to do that? How was he going to rebut it? In... in two ways. First of all, Senator Smith is... was at the time... He's no longer a senator. He was at the time the chairman of the Senate Armed Services Committee. And in the course of... of... of his committee actions, he formally asked ONI to... And he got no answer. So what... what does that rebut? Okay, what it does is it demonstrates that ONI stonewalled and refused to explain what they had done to doctor a critical piece of evidence in the case. There was no question that... that... that they had doctored a piece of evidence. But that could have been dealt with directly in... in the evidence of the case. I mean, the fact that some other person didn't get that same information, what does that prove? It... it... it shows the deception of the... of the Office of Naval Intelligence, which was critical in this case. Because they didn't want to tell him. When they were ordered to... That's what it shows. They were ordered to testify... to... to tell a Senate committee. They refused to do it. They stonewalled. They didn't refuse to come up and testify. They refused to say in so many words what they had done. They were deceptive. That was the point. The point was that you can't trust... But there was an opportunity at the trial to... to cross-examine these people on that very point, right? Excuse me? There was an opportunity at the trial to cross-examine representatives of the same agency on the same point. We did. Right. So what difference did it make what happened somewhere else at another time? It's... it's important to understand that... that not only were they not answering the questions at the time of trial, but they... they were... they were deceiving the United States Senate. They were stonewalling and deceptive at that time. This was a course of conduct by the ONI in... in covering up the entire incident here. It was very important that the jury understand how deceptive ONI had been in doctoring this particular piece of evidence. That not only would they not tell the jury what... what had been done... How come they didn't think... their obvious ultimate conclusion was they weren't deceptive? I don't know that that was their conclusion. So... I don't know that that was... It doesn't prove that they were deceptive. It proves that if they were deceptive, they weren't telling somebody else. They clearly were deceptive. You look at the... If you look at the... If you take the time to look at the photograph, you'll see it was doctored. And if you take the time to read the... the testimony of... of our expert, photographic expert, he testified that it was deceptive and doctored. There's no question that they did. Apparently he didn't believe them. And he also... Senator Smith also would have testified that ONI had... had told him, contrary to what they'd stated in their report, that they could not determine whether or not there was a laser on board the Captain Man. Those were the two critical pieces of... of his testimony. And the judge... There were four grounds for the judge's ruling in... in... on Senator Smith. First, that he wasn't a proper rebuttal witness because his testimony related to the validity of the ONI investigation that somehow or other was the subject of... of our case in chief. Well, this rationale fails for... for three reasons. First, we didn't offer any evidence concerning the ONI investigation during our case in chief. Most telling, of course, is that his ruling is totally at odds... His ruling on Senator Smith is totally at odds with the fact that he allowed our laser expert and our photographic expert to give rebuttal testimony on matters... on similar matters. To rebut testimony elicited by FESCO concerning the ONI investigation. The judge should have... trial court should have... allowed his... his testimony because, as a rebuttal witness, he was not in any way required to be listed on the pretrial witness list. Doesn't the rule say something about if they're not anticipated? Can't anticipate the rebuttal witness? That's what it used to say, but it doesn't say that any longer. Well, didn't it say it at the time? I don't have it in... I don't have the rule specifically in front of me. It's in the... it's in the... I'll... I'll look it up and get it... I thought there was a dispute at the trial about whether it said... There was. We... we had misquoted the rule. And a rule as properly quoted... As properly... as properly... that's right. The judge was correct in that regard. And as the rule was properly stated by the judge, he should have allowed this witness because this witness was... was truly solely for impeachment of the FESCO witnesses. And that court should have been anticipated. Correct. I see that my time is... is up, Your Honor. I'll... Thank you very much. We'll give you a minute. May it please the Court, my name is Mark Warner. I'm representing the appellees in this case, a group of Russian companies known as Far Eastern Shipping Company. At every turn when the appellant's case has been rejected, the appellant has found some individual or group to blame for that result. He blamed the Coast Guard. When the Coast Guard could find the laser aboard the vessel, he blamed the Office of Naval Intelligence, saying that they were biased. He blamed both the Clinton and the Bush administration, which is a nice split, that they are playing politics with this by not reopening the case. And now, of course, he's blaming the trial judge for the result of a jury verdict that came in after four hours after an eight-day trial, adverse to the appellant. I'll probably just limit my remarks to the three areas that the appellant has emphasized. If you have any questions on the other areas, of course, I'm sure you'll ask those. As far as the time limits of the case, you're quite right, Your Honor, when you recall that originally the parties did request a total of seven days for the trial. That would be three and a half days each. That was at the Judge Kuenhauer's pretrial scheduling conference about a year before the case. Just shortly before the trial, when we got together for another conference, which is the one that Mr. Hurley was referring to, the plaintiff indicated that he would like five days. The court indicated that he was not inclined to do that. And then Mr. Hurley or one of his counsel recommended or proposed four days, and the judge said that he would agree with that. And four days was the amount of time that was allowed to both sides for the presentation of their case. And this is very similar to the, of course, General Signal Corporation decision, where a specific number of hours were granted to each side. The court throughout the trial reminded the parties that they had a certain number of hours left so they could keep track of that, and the Ninth Circuit found that there was no abuse of discretion in the court managing its trial schedule, according to this pre-agreed time limit. There was a failure to object, we feel, during the trial to the number of hours that were allowed. Repeatedly, the judge would remind counsel of the remaining time. There are references in the brief that we've submitted where appellant's counsel would acknowledge that they realized they had a limited amount of time. They would live by those limits. There was never any specific request for an additional amount of time. The only witness or the only piece of evidence that was obvious to the court that possibly was affected by the time limit was Senator Smith, and as the court has realized and recognized, there were many other reasons for not allowing Senator Smith to testify, only one of which was the time limit. The only time that there was any objection to the time limit by the appellant was objecting to the court's calculation of the time that was allotted, but never an objection to the number of hours or the number of days, the four days it was allotted to each side. And I'd like to point out that the appellees, my clients, had the same limitation on their case. We had the same number of witnesses to present. In fact, some of our witnesses are Russian nationals, so it was required either to have an interpreter or to proceed more slowly with the examination, which took up more time, and we were able to get our case in within those allotted times. So we feel that the time was within the court's discretion. We also feel that the appellant waived his right to object to those now because there was no request for further time during the trial itself. As to Admiral Kramer. That did seem pretty tough, at least as to the timing. The request was made the next day, essentially, right? It was a mistake. What if he'd been on the original list? And he was on an earlier witness list, was he not? No, Your Honor. He was disclosed as initial disclosures at the very beginning of the case. He was not on the original pretrial order. He was. There was an amendment or an attempt to amend the next business day, as Mr. Hurley has indicated. I don't think the pretrial order is the main rationale here. I don't think that's a very strong argument for us. I would say you'd agree that if the only reason was that his name inadvertently was left off, it would be an abuse of discretion not to allow it to be added the next day. I'm not sure I would agree to that, Your Honor. Maybe you're better. Again, I don't think that's the strongest argument here. But the cases indicate that the Court does have discretion to limit witnesses to those listed on the pretrial order, and it was close to trial. And I think that arguably was within his discretion. This wasn't really a very important witness. It's very unlikely that they left him off for any strategic reason. Well, if the witness was that important, Your Honor, the main reason I feel that he was objectionable was that his topic, the broad topic that he was intended to be used for, was never disclosed to us before the trial. In the initial disclosures of what Admiral Kramer would testify to, he was described as testifying to facts and circumstances surrounding surveillance mission, period. Now — You're saying whether or not he was an expert, he was now being proposed for something that hadn't been disclosed earlier. That's right. And that's the other ground that I'm going to briefly touch on is that he was an expert, obviously an expert witness. But then when we get to trial, they propose to offer him. They want him to testify. But I suppose that — I mean, this, I should say, I find the most disturbing part of all this. And couldn't the judge have said, well, you can have him, but only for limited purposes, only for the purpose you originally said you were going to have him? In other words, there was no — I mean, there were two issues here. A was could he testify, and B, what could he testify to? The judge did not separate those out at all. The appellate never asked for a separation, Your Honor. It was either-or proposition. They wanted him to testify as to the broad history of what they alleged the spying activity or surveillance activity of the Soviet Union and Russia were during the last decade. That was the subject matter. And there was no request, well, Your Honor, can we at least provide him for just giving the details of the surveillance mission? The — I think the court picked up on the fact that the broad range of topics that he was being proposed to testify to could not be provided by a fact witness. He was alleged to be speaking to the alleged Russian monitoring of U.S. naval forces during the 1990s, the alleged use of the Apelles vessels for intelligence gathering, and the alleged use of lasers by intelligence agencies of Russia and the former Soviet Union. And suppose what he really was going to testify to, because we don't know, I gather it was never a proffer, was I, you know, met with a Russian intelligent agent who told me and showed me the lasers that they used. And here's one. Here's one of the lasers that they used as a weapon. Your Honor, it really strains credulity that — I'm sorry? It strains credulity that he could testify to that. And the fact is, it's interesting that in the appellate briefs, when the appellant had the opportunity, at least in an appendix, to provide a sworn declaration from Admiral Kramer that, oh, yeah, I was — I saw the laser used, I — But they could have done that in their appendix. How could they have given us something that wasn't before the district court? They — several other things have been attempted to do. They might have been able to do it for a new trial, but they couldn't have done it here. That's right, Your Honor. But there was no declaration provided to the trial court either in that case. And it just seems as though that that was not likely to have been a factual piece of evidence. I think — again, I think the important thing is here that Admiral Kramer's — the range of his testimony that they were proposing to use him for was never disclosed to the appellees until the time of trial or the amended pretrial order, when then they tried to disclose the broad range. And that was too late for the appellees to do anything about it. I have a question. Did you depose Admiral Kramer? No, Your Honor, we did not. The exclusion of Senator Smith. This was, of course, on the last day of trial. Senator Smith, then Senator Smith, was proposed to be brought in as a witness. Senator Smith had never been indicated to be a witness. He hadn't been indicated in the initial disclosures. He hadn't been disclosed in discovery, other than in passing, that his committee had held some hearings on the appellant's allegations. He wasn't listed in the pretrial order. So, of course, the rationale that had to be used by the appellant is, well, he's a rebuttal witness. But clearly he was not a rebuttal witness. As the Court is aware, the purpose of rebuttal witnesses is generally to address issues that come up by surprise during the case before the trier effect. And what the appellant wanted Senator Smith to testify to was that the Office of Naval Intelligence's investigation and testing was flawed. Well, this was an issue that was well-known and well-discussed throughout the discovery period and also during the appellant's case in chief. The appellant had tried to cast dispersions on the veracity and the reliability of the ONI report throughout discovery and throughout its case. And the Court is quite right in recalling that there is a local federal rule in the Western District of Washington that provides that the sole exception to listing all possible witnesses in your pretrial order is a rebuttal witness's, quote, the necessity of whose testimony cannot reasonably be anticipated before trial, end quote. That was clearly not the case here. The veracity of the ONI report was hotly debated throughout the discovery period and during the trial itself. In fact, as I pointed out in our brief, the majority of courts that have considered the situation have held that even though a subject matter is not brought up until the defendant's case in a case, if the plaintiff knows of the issue beforehand, then the plaintiff cannot surprise the defendant with a witness at the end as a rebuttal witness. And, of course, that makes sense because otherwise a plaintiff could maneuver a case so that they would introduce surprise witnesses just by avoiding bringing up a topic during their case in chief, even though they know that's an issue that's hotly debated and is key to the defense case and will be before the jury. Of course, the trial court has discretion to determine what's a rebuttal witness and what isn't, and they exercised, he exercised that discretion here. And, furthermore, under Evidence Rule 403, of course, the judge had the discretion, and that was part of his rationale to exclude Senator Smith, that evidence can be excluded when the relative probative value was substantially outweighed by the potential for unfair prejudice, confusion of issues. Kagan. Yes, Your Honor. And, of course, the situation here is the Senator was going to give, at best, tangential evidence to the key issue in this case. This is a personal injury case, despite all of the xenophobic, conspiratorial allegations. The appellant claimed that he was — What's slightly disturbing here is that, I mean, I agree with you, or I think I agree with you, that this doesn't sound like it was not — couldn't have been anticipated. But the judge had a vacation schedule for Saturday morning. Is that right? I believe he was leaving Saturday, yes, Your Honor. And this was Thursday. And he didn't know how long the jury was going to take. So if he — all that was being asked was that he wait from, what, mid-morning on Thursday until mid-afternoon on Thursday, right? Are you talking about for Senator Smith? Roger Smith. Basically, that was the — That was the allegation that he would arrive in the afternoon sometime on Thursday. And if he had allowed that, for all he knew, we could have had a problem with that as vacation, right? Because the jury could have taken longer than — that increment in time, that four hours, could have been enough time for the jury not to have come back before Saturday morning. Judge Kuenhauer had mentioned and made provision for if he was not there when the jury's deliberations ceased and the verdict came in, that that would be handled by another judge. So that wasn't — didn't seem to be a concern, Your Honor, as far as when the jury would finish its deliberations. If the panel has any questions on the other issues, you know, there was allegations of kind of a grab bag of fault as far as the trial court, as far as excluding an expert's test results, using a book that had not been listed as an exhibit and was hearsay, and that they didn't object to the court's ruling at the time. And then there's all the complaints about Judge Kuenhauer's way to handle the court, the case itself, sidebar conferences. All of those are explained in our brief and certainly do not rise to the level of this trial court. Most of those comments were simply handling evidence in an orderly way and adding a few lighthearted moments to an eight-day trial. I didn't feel compelled to use up all your time. If you think you've satisfied yourself, you should do that. Thank you, Your Honor. Also, does the Court wish any discussion on the — well, I'll let Mr. Hurley for rebuttal, but then the cost issue, of course, is still before the Court. I would point out that it was not a terribly lighthearted moment during the trial when the trial judge derisively mocked the Canadian accent of one of our witnesses. Did you make a motion for a new trial? We did. Do you, in that motion, make any proffer at that point about what Admiral Kramer would have said? I think we set forth the same things that we set forth in our appellate brief. How is the judge supposed to tell, as between the two possible readings of your very short description, whether he was going to get up and read from 75 history books and whether he was going to be testifying from his own knowledge? Because these were facts. These were stated as facts. They're facts, but they weren't stated as facts that he was — you didn't state that he was going to testify from his own perception. As you said, they are facts. And therefore, as facts, that means he was not an — But a history book, too, though. He was not an expert witness. So if he's not an expert witness, he should be allowed to testify. And on a question-by-question basis, if he has evidence that is not admissible, then his testimony can be excluded. But there was no reason to exclude him. What about the fact that he was never before revealed to have this information, for example, in the initial disclosures? It was — he was disclosed in the Rule 26 disclosures that — Disclosed, but the range of information was not. Is that correct? No. It said he had facts relevant to the case. It was FESCO's obligation to go and depose this witness. They didn't — I thought it said something like relevant to the incident. This is relevant to the incident. Use of a FESCO vessel for intelligence gathering, that's exactly what FESCO was doing. Use of a laser against U.S. intelligence gathering, the use of a laser by the FESCO vessel was exactly what happened here. This corroborated the circumstantial evidence which we presented in our case. It was very relevant to the — The subject of his testimony was not general related to the Soviet Union over a decade. It was specific to FESCO-owned vessels like the Captain Man, and it was specific to the use of lasers, which was precisely what had happened in this case. So this was not a broad-brush statement of his testimony. This was very keyed very specifically to the circumstantial evidence that we were presenting in our case. And the exclusion of this evidence was greatly prejudicial to Daley. This was his commanding officer. This was the highest-ranking intelligence officer in the United States Navy at the time. And he would have given this information. He would have given this testimony, this factual testimony, notwithstanding that this O&I investigation had concluded through a cover-up that there was no laser on the Captain Man. Thank you very much. I thank both counsel. The case of Daley v. FESCO Agencies is submitted, and we are adjourned.
judges: B. Fletcher, Hamilton, Berzon